# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEAH HEGEMAN<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL HARRISON, SUPERINTENDENT OF THE NEW ORLEANS POLICE DEPARTMENT, LARRY ADAMS, CHRISTOPHER BARBE AND JOHN DOE, NEW ORLEANS POLICE OFFICERS, THE CITY OF NEW ORLEANS<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO. 2:18-cv-613<br><br>SECTION:<br><br>JUDGE:<br><br>MAGISTRATE: |

## COMPLAINT

*Jury Trial Demanded*

### INTRODUCTION

1.

This Complaint is brought by Plaintiff, Leah Hegeman, a young woman and resident of New Orleans, who was unlawfully arrested, without probable cause, and physically assaulted by New Orleans Police Department Officers Larry Adams and Christopher Barbe, on January 20, 2017.  Although Ms. Hegeman was doing nothing wrong, and exercising her constitutional rights to assemble, associate, express her opinions and beliefs, and observe the conduct of public servants, she was violently pushed, physically assaulted, tackled to the ground, and battered by Defendant Larry Adams.  Ms. Hegeman was subsequently inappropriately groped, fondled and frisked by Defendant Christopher Barbe.  Following this unprovoked and unjustified attack, Ms.

1

Hegeman was falsely arrested and imprisoned. There was no legal cause or justification for the use of force, excessive force, false arrest and false imprisonment of Ms. Hegeman. The assault and battery on Ms. Hegeman resulted in serious and/or permanent physical and emotional injury to her including, but not limited to, multiple lacerations, a concussion, injury to the back of her neck, bruising, as well as mental anguish and emotional distress. Further, the false arrest and imprisonment of Ms. Hegeman has caused her to distrust law enforcement and the very individuals who are supposed to serve and protect her. As a result of this incident, Ms. Hegeman feels unsafe and unprotected by law enforcement in the community that she calls home. All charges against Ms. Hegeman related to her arrest have been dismissed by the Orleans Parish District Attorney's Office.

**JURISDICTION AND VENUE**

2.

This lawsuit is brought pursuant to 42 U.S.C. §§1983, (civil action for the deprivation of federal rights) and the First, Fourth and the Fourteenth Amendments to the United States Constitution and/or to other Acts of Congress and the United States Constitution itself. Plantiff further asserts claims pursuant to the Constitution of the State of Louisiana and other pertinent statutes, laws, and ordinances of the State. Jurisdiction is vested in this Honorable Court by 28 U.S.C. §§1331 (federal question) and 1343 (civil rights). The supplemental jurisdiction of this Honorable Court to hear claims arising under State law is invoked pursuant to 28 U.S.C. §1367.

3.

Venue is proper pursuant to 28 U.S.C. §1391(b) insofar as the relevant events giving rise to Plaintiff Hegeman's claims occurred in New Orleans, Louisiana, which is located in the Eastern District of Louisiana.

## PARTIES

4.

Plaintiff Leah Hegemen (hereinafter sometimes refered to as "Ms. Hegeman" or "Plaintiff") is a person of the full age of majority and a resident of the Eastern District of Louisiana.

5.

Defendant Larry Adams is a New Orleans Police Officer. He is a resident of Louisiana and is believed to be of the full age of majority. At all times relevant to this Complaint, he was employed as a law enforcement officer with the New Orleans Police department ("NOPD") and was acting in the course and scope of his employment and under color of law. He is sued in his individual and official capacity.

6.

Defendant Christopher Barbe is a New Orleans Police Officer. He is a resident of Louisiana and is believed to be of the full age of majority. At all times relevant to this Complaint, he was employed as a law enforcement officer with the NOPD and was acting in the course and scope of his employment and under color of law. He is sued in his individual and official capacity.

7.

Defendant John Doe (beileived to be Sergeant Gary Lewis) is a New Orleans Police Officer. He is a resident of Louisiana and is believed to be of the full age of majority. At all times relevant to this Complaint, he was employed as a law enforcement officer with the NOPD

and was acting in the course and scope of his employment and under color of law. He is sued in his individual and official capacity.

8.

Defendant City of New Orleans is a municipal corporation and political subdivision of the State of Louisiana capable of being sued and doing business in the Eastern District of Louisiana. At all relevant times herein, the City of New Orleans was the employer of defendant New Orleans Police Department personnel. City of New Orleans is directly liable for the acts complained of herein due to the policies, practices, procedures and customs of its police department and employees. It is also responsible for the hiring, training, supervision, discipline and control of the defendant NOPD peronnel named as defendants herein as well as other unnamed police employees and supervisors who had responsibility for the acts and ommissions described herein. Defendant City of New Orleans is also vicariously liable, under state law, for the actions of its employees as described herein.

9.

Defendant Miachael Harrison was the Superintendent of Police for the City of New Orleans at all pertinent times herein. He was responsible for the supervision, administration, policies, practices, customs and procedures of the NOPD, as well as the hiring, training, supervision, discipline and control of the defendant NOPD peronnel, as well as other unammed police personnel who had responsibility for the acts and omissions described herein. He is a resident of Louisiana and is believed to be of the full age of majority. At all times relevant to this Complaint, he was employed as a law enforcement officer with the NOPD and was acting in the course and scope of his employment and under color of law. He is sued in his individual and official capacity.

10.

ABC Insurance Company, alleged on informaiton and belief, a foreign or domestic insurance comopany, authorized to do and doing business in the State of Louisiana as the insurer of City of New Orlenas Police Department and NOPD personnel.

**FACTUAL BACKGROUND**

11.

On January 20, 2017, Ms. Leah Hegeman was lawfully exercising her constitutional right to peaceably assemble, and observe a gathering to protest the recent inauguraiton of the 45th Prestident of the Unitted States. In addition, Ms. Hegeman was attempting to film the protests, which is also her right as a citizen. Ms. Hegeman's participation in the assembly was minimal, as she was simply walking, chanting and filming the event. Ms. Hegeman was not violating any municipal, State or federal laws while participating in peaceful protest, nor was she violating any laws by observing and filimg same. Ms. Hegeman was not engaging in any destructive or unlawful behavior on January 20, 2017.

12.

The aforementioned protesters gathered at Lafayette Square, in New Orleans, Louisiana around 7:00pm. At that time, Ms. Hegeman did not know anyone else attending the protest, except for her partner, David Flashner, who accompanied her for the entirety of the protest march. Ms. Hegeman's participation was limited to walking and chanting, activities which are protected by the U.S. Costitution. Ms. Hegeman was merely excercising her rights to free speech and freedom to peaceably assembly.

13.

As the march continued, officers from the New Orleans Police Department (NOPD) began to intertefere with the protesters. At this time, Ms. Hegeman noticed several physical interactions between the NOPD officers and protesters, particularly instances of violence being perpetrated by some of the officers. Ms. Hegeman observed several protesters being tackled and violently pulled away from their friends. Ms. Hegeman decided to stay with the march and film what she believed to be unlawful use of force and brutal tactics implemented by some of the officers.

14.

The actions of the NOPD officers began to escalate as the protest march made its way down Royal St. and turned onto Conti St. It was at this point that Ms. Hegeman obseved NOPD officers running through the protest crowd armed with what she believed to be shotguns. One of the officers armed with a shotgun shoved Ms. Hegeman from behind and yelled something like "this is your last chance!" Ms. Hegeman continued to film the scene, as she was concerned about officers running through the crowd with shotguns. Up to this point, there had been no audible command from NOPD ordering protesters to disperse.

15.

At or around 7:50pm., the march had turned from Conti St. onto North Rampart St. Ms. Hegeman was walking in the 500 block of North Rampart St. This location is across the street from the NOPD 1st District Station. At that time, Ms. Hegeman noticed an NOPD officer revving the engine of his department motorcycle. The officer was following closely behind citizens and, at one point, hit one of the protesters with the front wheel of his motorcycle. Upon witnessing this incident, Ms. Hegeman determined that the area had become too dangerous and she removed herself from the area by crossing over to the river-side side walk of North Rampart

St. She continued to observe the scene from what she believed was a safe distance, which is her right. At no time was she told by law enforcement that she should disperse from that location, that she was impeding police work or that she could not film or record.

16.

While attempting to film the scene, Ms. Hegeman noticed NOPD officers tasing and beating protesters who were attempting to disperse form the scnene. Although, to Ms. Hegeman's knowledge, there had been no audible order for the protesters to disperse, NOPD officers could also be seen pinning protesters between a fence and parked vehicles. At the time, it appeared that the officers were targetting protesters who were wearing black. As Ms. Hegeman was only attemtping to film the protests, the officers were not targeting her at that time.

17.

While continuing to stand in the 500 block of North Rampart St., Ms. Hegeman observed an NOPD police officer beating and choking an unarmed man on the ground. Ms. Hegeman began to film the altercation, when Defendant Larry Adams charged towards her and violently pushed her back. Defendant Adams did not verbally command or warn Ms. Hegeman to move back. Nor did Defendant Adams command Ms. Hegeman to stop filming or to disperse.

18.

Ms. Hegeman began to back up while continuing to film the altercation between the officer and the unarmed man on the ground. All the while, Defendant Adams continued to charge towards Ms. Hegeman. Ms. Hegeman repeatedly asked Officer Adams where she would be allowed to record and reminded him that she had a right to record the interactions from a safe distance. Defendant Adams yelled "police corridor" a few times, but never warned Ms. Hegeman

that she was breaking any law, or that she would be arrested. Defendant Adams never told Ms. Hegeman where she could record the protest safely. Instead, he continued to push Ms. Hegeman backward, approximately one-hundred (100) feet. As Ms. Hegeman continued to back up quickly, Defendant Adams, who, upon information and belief, is over six (6) feet tall and weighs approximately three-hundred (300) pounds, suddenly and violently bumped into Ms. Hegeman and tackled her to the ground. While tackling Ms. Hegeman to the ground, Defendant Adams yelled to other officers about the location of his body camera, which was not attached to his uniform. Also, during this time, several officers were yelling to turn off their body cameras. When Ms. Hegeman was tackled by Defendant Adams, she hit the ground with great force. Ms. Hegeman then felt a tremendous amount of pressure on the back of her neck, which caused excruciating pain and restricted her breathing. Ms. Hegeman screamed and yelled several times that she could not breath. However, Defendant Adams did not relent, and he continued to apply force to the back of Ms. Hegeman's neck. Moments later, Ms. Hegeman lost consciousness.

19.

When Ms. Hegeman regained consciousness, she was handcuffed and she heard officers yelling to remove her backpack. Ms. Hegeman's backpack could not be removed because she was handcuffed, so officers used a knife to removed her backpack. The knife made contact with Ms. Hegeman and cut her. As this was occuring an NOPD officer, Defendant John Doe, was issuing a loud and authoritative command for the officers to turn off their body cameras.

20.

Once her backpack was removed, Ms. Hegeman was aggressively groped by an officer, who, upon informaiton and belief, was later identified as NOPD officer recruit Christopher Barbe. Upon information and belief, Defendant Barbe was Defendant Adams's recruit. Defendant Barbe

8

seemed to think that Ms. Hegeman was a man. Ms. Hegeman explained to Defendant Barbe that she is female and that he should not be frisking her. Defendant Barbe ignored Ms. Hegeman's plea for him to stop frisking her, and he continued to grope her chest and groin, and asked her, "What are you?" Defendant Barbe then called out, extremely loudly, for a female officer to come "…frisk this thing." No female officer ever came to frisk Ms. Hegeman, and Defendant Barbe continued to check Ms. Hegeman's pockets before finally placing her in the rear of a police unit.

21.

Ms. Hegeman has a medical history of brain cancer and becomes symptomatic under stress, duress and/or physical or mental trauma. Ms. Hegeman is required to seek medical attention whenever she experiences head trauma. While seated in the rear of the police unit, Ms. Hegeman informed officers of her medical condition, that she was experiencing symptoms and requested the required medical attention. She also requested, no fewer than six times, the badge numbers or the cards of the officers handling her, as well as the badge numbers or cards of other officers on the scene. Her requests for medical attention and badge numbers were met with laughter from the NOPD officers attending to her. She was not told why she was being arrested, nor were her *Miranda* rights ever read to her.

22.

At some point Ms. Hegeman was moved to a second police unit and placed in the rear seat with another protester who had been arrested. Both Ms. Hegeman and the other protester requested that medical treament be provided to Ms. Hegeman, which requests were ignored. Ms. Hegeman sat in the rear seat of the police unit for approximately thirty minutes without receiving any medical attention. When EMS finally arrived an officer came over to the unit and put a neck brace on her. Ms. Hegeman was removed from the police unit, placed on the hood and frisked

again by a male officer. Ms. Hegeman was then left on the hood of the police unit for approximately ten minutes while she waited for a stretcher. She could barely stand up or walk and had difficulty breathing.

23.

After a considerable amount of time had passed, Ms. Hegeman was finally transported to University Medical Center. When she arrived at the hospital, Ms. Hegeman was approached by an NOPD officer who, upon information and belief, was identified as Sergeant Davis. Sergeant Davis pesented himself as a member of the internal affairs department. Sergeant Davis took pictures of Ms. Hegeman's injuries and demanded that she make a statement. When Ms. Hegeman requested a lawyer before making a statement, the officer told her that she would not be able to get an attorney at such a late hour on a Friday evening. Ms. Hegeman told Sergeant Davis at least four times that she was not interested in making a statement. However, Sergeant Davis persisted. Believing she had no other choice, Ms. Hegeman gave a statement to Sergeant Davis. Sergeant Davis told Ms. Hegeman that the interview would not be used in court against her. However, video of the interview was turned over in discovery in Ms. Hegeman's criminal case.

24.

Upon information and belief, Defendants Larry Adams, Christopher Barbe and John Doe were wearing body cameras supplied by the NOPD. Officers are required by NOPD regulations and policy to turn on body cameras when they are interacting with the public. However, upon information and belief, none of the defendants activated their body cameras when intarcting with Ms. Hegeman. Further, upon information and belief, Defendant John Doe ordered officers on

the scene, including Defendants herein, to turn off their body cameras on the evening of January 20, 2017.

25.

In addition to the physical and emotional injuries suffered by Ms Hegeman, she also suffered property damage and losses. Her backpack was damaged when the straps were cut unnecessarily. Her cellular phone was damaged, as it would not turn on, and she was required to purchase a new phone. Also, her keys were never recovered after they fell to the ground. The only personal property that Ms. Hegeman was able to recover was her wallet.

26.

Ms. Hegeman sustained multiple and serious injuries as a result of the excessive force used by Defendant Larry Adams, as well as the actions or omissions of all other Defendants herein, including, but not limited to, multiple lacerations, a concussion, injuries to the back of her neck, bruising, as well as mental anguish and emotional distress. The injury to Ms. Hegeman's neck required a neck brace to stabilize her neck, and caused her to lose consciousness. Ms. Hegeman suffered a concussion resulting from her treatment at the hands of Defendant Larry Adams. The concussion caused Ms. Hegeman to experience severe dizziness and nausea. Ms. Hegeman also suffers from Post-Traumatic Stress Disorder (PTSD), a pre-existing diagnosis that Ms. Hegeman has lived with for several years prior to her encounter with the Defendants herein. The physical and mental abuse that she suffered at the hands of Defendants herein on January 20, 2017 caused Ms. Hegeman's PTSD to intensify and become symptomatic. As a result, Ms. Hegeman continues to see a therapist due to the emotional and psychological injuries she sustained from the actions of Defendants herein.

27.

After being treated at University Medical Center, Ms. Hegeman was transported to Orleans Parish Prison and charged with violating La.R.S. 14:56.5(C)(1) (criminal damage to historical building or landmark); La.R.S. 14:313 (wearing masks in public); and La.R.S. 14:329.2 (inciting a riot).  Ultimately, all charges against Ms. Hegeman were dismissed by the Orleans Parish District Attorney's Office.

28.

Upon information and belief, Defendant Larry Adams attempted to conceal his use of excessive force by creating a false and misleading story regarding his encounter with Ms. Hegeman, including falsely claiming that Ms. Hegeman was in violation of the above referenced statutes and that Ms. Hegeman used force against Defendant Adams.  These assrtions, if they were made, were untrue, as the Defendants well knew at the time of Ms. Hegeman's arrest.

29.

As a result of her false arrest and false imprisonment, Ms. Hegeman has suffered economic losses.  Ms. Hegeman was unable to work and participate in potential employment opportnities.  Also, as a result of this incident, Ms. Hegeman has had to hire attorneys to represent her and she has had to pay for various medical expenses.

30.

Upon information and belief, Defendant John Doe was the supervisor of Defendant Larry Adams, Defendant Christopher Barbe and the other officers on the scene.  Defendant John Doe failed to intervene to prevent the assault on Plaintiff and, as described above, contributed to and/or condoned and/or encouraged the officers' illegal behavior by telling officers on the scene

to turn off their body cameras.  Defendant John Doe also failed to properly investigate or report the actions of the Defendant officers herein.

31.

Defendant Michael Harrison, the Superintendent of the NOPD, failed to properly screen before hiring and failed to properly supervise, train and discipline the officers involved in this incident and, particualrly, failed to adequately train them to approach, interview and investigate citizens in a contitutional manner.  Defendant Harrison failed to properly supervise and train the officers in this incident to avoid unreasonable seizures, unlawful arrests, unlawful harassment, and excessive force.  Defendant Harrison protected and sheltered officers, including Defendants herein, from accountability and/or discipline for their unlawful arrests and use of excessive force.   Defendant Harrison, having supervisory authority over internal investigations and discipline, has repeatedly condoned and ratified the illegal and unconstitutional acts of NOPD officers, including but not limited to those described herein.  Further, Defendant Harrison failed to take appropriate action to re-train or other wise address the misconduct of the officers in this case.

32.

Ms. Hegeman filed a complaint with the New Orleans Police Department, alleging the foregoing facts, including the violation of her contitutional rights by Defendants.  Upon information and belief, no disciplnary measures were taken againt Defendants.  Defendants continue to operate in their capacity as NOPD officers.

33.

The actions of the Defendants herein were done with deliberate indifference to, and in recklesss disregard of, the consititutional rights of  Plaintiff, Ms. Hegeman.  These actions were

intentional, malicious, willful, wanton, reckless, and negligent.  The acts and omissions of the Defendants were done in concert and in conspiracy to violate the legal rights of Plaintiff, Ms. Hegeman.  The Defendants herein are jointly and severally liable for the wrongs articulated in the instant Complaint, for the resulting injuries and damages sustained by Ms. Hegeman.

34.

As a result of the actions of Defendants herein, Ms. Hegeman was unlawfully deprived of her liberty and prevented from, and punished for, exercising her constitutionally protected rights.  Further, as a direct result of the actions of Defendants herein, Plaintiff suffered serious physical pain and injury, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, false imprisonment, lost income, inconvenience, and incurred legal and medical bills.

## CAUSES OF ACTION

35.

The actions and omissions of the Defendants as described herein were done with deliberate indifference to the constitutional rights of Ms. Hegeman and violated Plaintiff Leah Hegeman's rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including the right to be free from unreasonable searches and seizures, the right to be free from excessive force, the right to be free from cruel and unusual punishment, the right to assemble peaceably, the right to privacy, to liberty, to be left alone, to locomotion, to travel, the rights to free speech and association, the right to due process of law, and the right to equal protection of the law.  The Defendants acted maliciously, willfully, wantonly, and with reckless disregard of Ms. Hegeman's rights.

36.

The acts and omissions of the Defendants as describe herein were also done with negligence, gross negligence and/or intent, in violation of Louisiana statutory and consitutional law and constituted false arrest, false imprisonment, assault, battery, intentional infliction of emotional distress, and violation of the rights to privacy, to liberty, to be left alone, to locomotion, to travel, to be free from unreasonable search and seizure, to be free from unjusitfiable and excessive use of force and the rights to free speech and association and assembly, due process of law, and equal protection under state law.

37.

Defendants City of New orleans and/or Michael Harrison, in their official capacities, have exhibited a policy, practice, and/or custom of callousness and reckless disregard for the civil rights of residents like the Plaintiff in their failure to adequately screen, hire, train, supervise, and/or discipline employees and police officers. These Defendants have also exhibited a policy, practice and/or custom of concealing civil rights violations. Further, these Defendants have authorized, permitted, ratified and condoned a policy, practice and custom whereby constitutionally protected gatherings and activities have been the subject of disruption, interference, harassment and intimidation, in an effort to deter, frustrate, intimidate and have a chilling effect upon the civil rights of New Orleans citizens and/or residents.

38.

The actions and omissions of all of the Defendants as described herein were the proximate cause of the damages suffered by Ms. Hegeman.

**WHEREFORE**, Plaintiff, Leah Hegeman requests a jury trial and prays that Defendants be served with a copy of this Complaint and be duly cited to appear and answer this Complaint; and that after due proceedings have been had, judgment be rendered in Plaintiff's favor and against Defendants for the following relief:

a. Nominal, compensatory, and punitive damages from Defendants in an amount to be determined;

b. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

c. Costs associated with prosecuting this case;

d. Pre-trial and post-judgment interest;

e. Such other legal and equitable relief that may be deemed reasonable and just in this case.

Respectfully submitted,

/s/ David M. Abdullah
David M. Abdullah (Trial Attorney)
La. State Bar No. 27349
Joseph C. Peiffer
La. State Bar No. 26459
PEIFFER ROSCA WOLF
CARR & KANE APLC
201 St. Charles Ave., Ste. 4610
New Orleans, LA 70170
Telephone: (504) 523-2434
Facsimile: (504) 523-2464
dabdullah@prwlegal.com
jpeiffer@prwlegal.com
*Attorneys for Plaintiff*